IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILEMEDIA IDEAS LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 2:10-cv-112-JRG |
| HTC CORPORATION AND HTC AMERICA, INC., | § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is Defendants HTC Corporation and HTC America, Inc.'s (collectively, "HTC" or "Defendants") second motion to transfer venue. (Dkt. No. 96.) Defendants contend that the Northern District of California (NDCA) is a more convenient forum than the Eastern District of Texas (EDTX) and seek to transfer venue to the NDCA pursuant to 28 U.S.C. § 1404(a). The Court, having considered this venue motion, the related briefing, and oral argument of counsel, DENIES the Defendants' motion to transfer venue and finds that the balance of the "private" and "public" convenience factors demonstrate that the transferee venue is not "clearly more convenient" than the current venue. *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F. 3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 2010, MobileMedia Ideas LLC ("MMI" or "Plaintiff") filed this lawsuit against HTC alleging infringement of eleven patents.  MMI is a Delaware limited liability company having a principal place of business in Chevy Chase, Maryland.  HTC Corp. is a Taiwanese corporation with its principal place of business in Taoyuan, Taiwan.  HTC America was a Texas corporation when MMI filed its complaint but is now a Washington corporation.  When this suit was filed its principal place of business was in Texas but is now in Washington.

At the time this action was filed, HTC America, an original party and the principal American subsidiary of HTC Corp., was incorporated in Texas and had for several years identified a location in Texas as its principal place of business, as shown in the public filings made with the Texas Secretary of State.  Despite its connections to Texas, on October 20, 2010, HTC filed its first motion to transfer, arguing that the NDCA was a clearly more convenient forum.  (Dkt. No. 23.)  During the midst of the briefing regarding such transfer motion, near the end of 2010, HTC America reincorporated in Washington State and closed a major repair facility in Houston.

On September 15, 2011, the Court denied HTC's first motion to transfer, stating that HTC had not "met its significant burden of showing that it would be 'clearly more convenient' for this case to be litigated in the transferee venue." (Dkt. No. 84, at 1.)  However, the Court explained that it could not "mak[e] a determination regarding whether this case should be transferred" because HTC had not provided at least two critical pieces of information: (1) why HTC American ended its operations in Houston, Texas after this action was filed; and (2) why HTC America changed its state of incorporation from Texas to Washington while its original motion to transfer venue was pending. *Id.*, at 1-2.  The Court also noted that HTC "ha[d] not

2

explained why this Court should … not consider HTC's presence in Texas at the beginning of this lawsuit." *Id.*, at 2. Given these uncertainties, the Court denied HTC's motion without prejudice and allowed MMI to take further discovery on these two issues, while noting that the Court's discussion of "the two emphasized issues in this Order … does not necessarily mean that the Court is otherwise convinced that the convenience factors weight in favor of transfer." *Id.*, at 3.

On December 12, 2011, HTC filed this renewed (second) motion to transfer venue to the Northern District of California. (Dkt. No. 96.) This Memorandum Opinion and Order addresses the merits of the second motion to transfer.

## III.   LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors

3

include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.  The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV. ANALYSIS

### A. Proper Venue

MMI does not dispute that this case could have been brought in the NDCA, so the initial threshold in this case has been met. An analysis of the public and private interests cited above must next be considered and weighed.

### B. Private Interest Factors

#### i. *Other Practical Problems*

Analysis of the Private Interest Factors typically starts with a discussion of "relative ease of access to sources of proof" and ends with a review of any "other practical problems." However, this is not a typical situation.  In this case the Court believes it should begin by a review of the real and practical problems created by the conduct of HTC.  MMI could have filed this action in several different venues but it elected to file this case in the EDTX because HTC America then maintained a significant U.S. business presence in Texas and was then a corporate

domiciliary of Texas. This Court believes that HTC's former status as a Texas corporation and its strong ties to Texas warrant consideration in this venue analysis. Simply put, MMI did what any conscientious patent holder would have done in similar circumstances; *i.e.*: it sued its alleged infringer in the Defendant's home state where it had major operations. It was HTC who then moved to transfer venue and subsequently took steps to bolster its venue arguments by closing facilities in Texas and reincorporate in Washington. This Court reaches no other reasonable conclusion than to believe that Defendant HTC America has knowingly undertaken to manipulate venue in this case. That conduct should not be rewarded.

For seven years (from 2003 until December 27, 2010), HTC Corp.'s primary U.S. subsidiary, HTC America, and its predecessor HTC USA, were incorporated within and carried on substantial operations in the state of Texas. (Dkt. No. 100, at 7.) Relying on these long-standing ties to Texas, MMI – a Delaware corporation operating in Maryland – came to HTC's home state and initiated this patent infringement lawsuit in the EDTX. It was only <u>after</u> MMI gave notice of infringement to HTC – and, notably, five days before this lawsuit was filed – that HTC America announced that it would not renew the lease on its largest Texas facility, despite continuing operations at that site for six months after this case was filed. Additionally, in the midst of briefing the first transfer motion filed by HTC in this case, HTC America "un-incorporated" in Texas and moved to "re-incorporate" in Washington. Based on these facts, this Court previously observed as a part of the first motion to transfer venue that "HTC ha[d] not explained why this Court should still not consider HTC's presence in Texas at the beginning of this lawsuit" because MMI "relied on HTC's presence [in Texas] when filing this lawsuit, and Plaintiff should not necessarily be prejudiced in the middle of a lawsuit because the defendant made a corporate change." (Dkt. No. 84.)

The Court then provided the parties with an opportunity to take discovery related to the motives for HTC's change in incorporation. During a deposition on that topic, HTC objected on privilege grounds to the witness disclosing any information related to HTC's motives in relocating from Texas to Washington. (Dkt. No. 100, at 5.) When having a legitimate basis to assert a privilege, HTC is certainly entitled to do so. However, by asserting privilege on issues related to venue, especially relating to questions expressly raised by this Court, HTC has abandoned its chance to answer those questions and clear itself from any allegations that it acted to manipulate venue. HTC knew all of this when it asserted its privilege. Further, HTC took no other steps that might have protected its privilege while still evidencing a desire to answer this Court's concerns. No efforts to answer these questions pursuant to a protective order or to seek an in camera review were ever initiated by HTC. Despite MMI's renewed discovery targeting the actions of HTC to move away from Texas in the face of the first venue motion, HTC has done nothing to provide, or attempt to provide, the Court with any meaningful information to address its earlier concerns regarding possible venue manipulation. Almost six months after the Court issued its denial of HTC's first transfer motion, the Court is still confronted with the same concerns and HTC has done nothing to address or lessen those concerns, despite ample opportunities. This conduct is troubling and can only be viewed as supporting the conclusion that HTC acted to manipulate venue in this case.

Courts have previously witnessed mirror-image actions by Plaintiffs taking steps calculated to impact and sometimes actually manipulate venue. *See, e.g., In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) (Plaintiff's chosen state of incorporation requires "close scrutiny" to determine whether it is an "artifact of litigation.") However, here it is the Defendant who is the actor. HTC's actions also warrant careful scrutiny against the backdrop of

determining whether its actions rise to the level of venue manipulation. This Court believes such is the case here, and that HTC's reincorporation and plant closings are an "artifact of litigation." HTC should no more be able to benefit from these actions, under a fair analysis of the venue factors, than should some plaintiff who opens an office in the targeted venue a matter of days or weeks before filing suit.

Ultimately, while HTC's state of incorporation is not dispositive to the transfer analysis, HTC's long-standing incorporation and business presence in Texas is a relevant factor in this transfer analysis, particularly where HTC does not seek transfer to a forum where it is now headquartered or where the vast majority of witnesses are concentrated.[1]  As noted above, one reason why this suit is currently pending in the EDTX is because HTC America was incorporated as a *Texas* corporation when MMI initiated this lawsuit. MMI should not be prejudiced by delaying this suit and moving venue when it is HTC – not MMI – that acted to impact and alter venue. Borrowing from our system's reliance on equity, it is this Court's view that HTC does not have "clean hands" with regard to the matter of venue. It is clear that MMI's hands are clean in this regard. That distinction should not be ignored while applying the public and private venue factors recited herein.

While HTC has tried to cast this as a domestic dispute for the purpose of aiding their venue arguments, this is really a case pitting a company primarily operating in Taiwan and a company primarily operating in Maryland. The vast majority of the inventors of the eleven

---

[1] HTC's attempt to bootstrap onto the transfer decision in a separate case involving MMI and Research in Motion is unavailing. *MobileMedia Ideas LLC v. Research in Motion*, No. 2:10-cv-112 (E.D. Tex. Aug. 30, 2011) (Dkt. No. 106.) Many factors distinguish HTC's motion from RIM's motion to transfer, not the least of which is the fact that RIM sought transfer to the primary locus of its U.S. operations and identified a number of persons who resided in the proposed transferee forum who had specific knowledge relevant to the case. *Id*. The Court found that "most of RIM's licensing and standards employees, as well as many of its engineers, sales, and marketing employees" were in the transferee forum. *Id*. at 6. The Court also found that many categories of documents relevant to issues of infringing and damages were housed in the transferee forum. *Id*. at 4. Because HTC seeks transfer to a district with which it has very little relationship, HTC has fallen far short of making any comparable showing here.

patents-in-suit are equally dispersed between Europe and Asia. It is clearly *inconvenient* for MMI to have its patent infringement lawsuit moved to California because a Texas-based Defendant chose to reincorporate to a different state in the middle of this lawsuit. The unique circumstances involving HTC's presence in Texas at the time this suit was filed, MMI's reliance on such presence, and HTC's subsequent conduct is a practical consideration that weighs against transfer.

### ii.     *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the next "private" interest factor to be considered. Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

HTC states that the "vast majority" of HTC's physical evidence is located in Taiwan, with certain other relevant U.S. documents being located in Washington State and the NDCA. HTC contends that it has no documents relevant to this lawsuit in Texas. HTC believes that the Android operating system will be relevant to this lawsuit and therefore argues that Google, the designer of such operating system, will be a significant source of proof in this case. Google's records and business documents relating to the Android operating system are located in the Northern District of California, and HTC has an ongoing working relationship with Google to

8

develop, design and manufacture the accused HTC smartphones. Similarly, other HTC accused products in this case run on a Windows mobile operating system designed and developed by Microsoft. HTC argues that technical documents and witnesses relevant to this suit are therefore likely to be located at Microsoft's headquarters in Washington State. Finally, HTC argues that the presence of two named inventors and two prosecuting attorneys of some of the patents-in-suit in California also weighs in favor of transfer.

MMI responds that HTC America currently employees 19 full-time employees in Texas, including a "national sales manager" who resides in the EDTX. MMI also contends that potential HTC sources of proof in the NDCA are non-substantial and irrelevant to the issues in this lawsuit. According to MMI, the majority of HTC's activities, including product development and sales and marketing, occur far outside of California, primarily in Taiwan. The only HTC employees located in the NDCA are employees of HTC's design facility in San Francisco, California who are responsible for the "look and feel" and "user experience" features of HTC smartphones. MMI argues that such features have no relevance to this case.

MMI also questions HTC's claim that Google (located within the NDCA) will likely have evidence relevant to this lawsuit. The deadline for party discovery has passed, and third party discovery will soon close. MMI contends that both parties have issued multiple third party subpoenas (one to a Texas company), but that *neither party has subpoenaed Google for any documents or subpoenaed any Google witnesses for depositions*. Neither has HTC provided the Court with declarations demonstrating that the location of Google is relevant to this case. MMI further notes that this case involves 11 patents based on technology developed primarily outside of the United States and that of the 25 named inventors identified by HTC, nine reside in Finland, one in the United Kingdom, nine in Japan, two in California and one in Texas.

9

The Court now turns to the question of Google's relevance to this case and the weight that should be afforded to its presence in the NDCA.  Despite HTC's statements to the contrary, there are absolutely no facts before the Court to support a contention that Google has documents relevant to *this* lawsuit.  As stated above, most of the discovery in this case has already closed and neither party has subpoenaed Google for *any* documents, nor have they subpoenaed Google for the deposition of *any* witnesses.  Where the party seeking transfer "only vaguely refer[s] to potential witnesses," transfer is not warranted.  *See, e.g., T-Netix, Inc. v. Pinnacle Pub. Servs., LLC,* No. 2:09-cv-333, 2010 WL 3859687, at *3 (E.D. Tex. Sept. 30, 2010); *see also In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (a court deciding a transfer motion "should assess the relevance and materiality of the information the witness may provide").  HTC has failed to establish that Google's California headquarters should serve as a basis for transfer of this case to the NDCA.  Similarly, there is nothing before the Court (documents, depositions, etc.) to support the additional contention that Microsoft has documents and witnesses relevant to this suit.  Therefore, HTC has also failed to establish that Microsoft's headquarters in Washington should serve as a basis for transfer of this case.

Almost all of the sources of proof *relevant to this lawsuit* are located thousands of miles away from the NDCA.  HTC admits that the vast majority of its physical evidence relevant to this case was located in Taiwan, with certain other documents located in the state of Washington.  All of these documents have already been produced.  The twenty-five inventors of the various asserted patents are scattered around the globe, with nearly all split between Europe and Asia.  Of the remaining three inventors, one resides in Texas and two reside in California.  Additional sources of proof – MMI's own documents and witnesses – are principally located at or near Chevy Chase, Maryland.

The relative ease of access to some of the sources of proof weighs in favor of transfer (HTC's presence in Washington State and two inventors in California) while the location of other sources weighs against transfer (MMI's presence in Maryland, HTC's national sales manager in the EDTX and an inventor residing in Fort Worth, Texas). On balance, the Court finds that the relative ease of access to sources of proof factor is neutral.

### iii. Availability of Compulsory Process

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.* This factor will weigh more heavily in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffman-La Roche Inc.*, 587 F.3d at 1338.

HTC argues that the NDCA's absolute subpoena power would be important in securing testimony from three of the twenty-five inventors of the asserted patents (Mr. Janky, Mr. Jasmin and Ms. Wilska[2]) as well as two prosecuting attorneys (Mr. Hardcastle and Mr. Schipper) of some of the patents-in-suit. HTC also argues that the NDCA's absolute subpoena power would be important to secure testimony from witnesses with knowledge of the operating systems and

---

[2] The Court learned during the oral hearing that one of the three U.S. inventors, Mr. Wilska, actually resides in Ft. Worth, *Texas*. (Dkt. No. 144, at 62.) HTC argues that Mr. Wilska is subject to process in California because he travels there occasionally on business. While this may be true, when evaluating the availability of compulsory process factor, the Court lends more weight to the location Mr. Wilska's permanent residence than to somewhere he occasionally travels. Therefore, with respect to at least Mr. Wilska, the availability of compulsory process factor weighs in favor of the Eastern District of Texas.

features of the accused devices and processors implicated in HTC infringement allegations (*e.g.,* Google).

MMI contends that HTC places improper weight on the significance of the three inventors located in California because there are eleven patents-in-suit and twenty-five inventors located throughout the world. MMI also argues that HTC has not provided any explanation why trial attendance for these witnesses would be necessary.

On balance, the Court finds that this factor weighs slightly in favor of transfer. It is reasonable that two of the twenty-five inventors and two prosecuting attorneys regarding some of the asserted patents will have information relevant to this suit. Conversely, MMI has identified only one inventor (Mr. Wilska) that would be subject to the absolute subpoena power of this Court. While the *vast* majority of third-party witnesses are located in Europe and Asia, and therefore not subject to absolute compulsory service of process in either district, the small number of additional third-party witnesses located in the NDCA as opposed to the EDTX weighs slightly (but only slightly) in favor of transfer.

> iv.     *Cost of Attendance for Willing Witnesses*

Next, the court must weigh the cost for witnesses to travel and attend trial in the EDTX versus the NDCA. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *In re Genentech*, 566 F.3d at 1344. Further, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id*. at 1344-45.

In this case, the evidence with respect to this factor is closely aligned with the relative ease of access to sources of proof factor. As the Court found with respect to that factor, this factor is also neutral.

    **D.**    **Public Interest Factors**

        *i.*    *Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.*

This case has now been pending in this Court for more than two years. As of January of this year, document production had been substantially completed, the parties had served and answered interrogatories, MMI disclosed two experts, the parties exchanged privilege logs, the

parties served a total of 23 third-party subpoenas and taken five inventor depositions, with three more scheduled to take place in Japan. (Dkt. No. 100, at 17.) Since that time, obviously, even further activity has occurred in this case. The *Markman* hearing is scheduled for July 10, 2012 (and claim construction briefing has begun) and the pretrial conference in this case is set for April 22, 2013. Placing itself in the shoes of similarly busy trial judges in California, this Court believes that it is nearly impossible for a District Judge in the NDCA to receive this case, get up to speed on the issues, and schedule a *Markman* hearing and jury selection nearly as quickly as the dates already set in this district. This factor weighs against transfer.

    ii.  *Local Interest*

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

HTC argues that the NDCA has a local interest in this dispute because "aspects of the accused technologies were developed in California and certain inventors and prosecuting attorneys reside in the Northern District of California." (Dkt. No. 96, at 15.) HTC also relies upon HTC's work in its San Francisco design facility and Google's work developing the Android OS at its facilities in the NDCA.

MMI contends that the NDCA does not have a local interest relevant to *this litigation*. Neither MMI nor HTC are headquartered in the NDCA, and none of the activities related to the claims in *this* case occurred in the NDCA. MMI also argues that the presence of two inventors

and two prosecuting attorneys in California does not support a local interest in that district because the vast majority of the inventors are split between Europe and Asia. With regard to the local interest of the EDTX, MMI points to the extent of HTC's historic and current ties to Texas, which according to MMI, demonstrates a strong local interest in this District. HTC's National Sales Manager is identified as a material witness and is located within the EDTX.

Admittedly, neither the NDCA nor the EDTX has a strong local interest in this lawsuit. However, two of the twenty-five inventors of the patents-in-suit are located within the NDCA, while only one inventor is located in Texas (outside the Eastern District), and a Senior Vice President for Sales for HTC (residing within the EDTX) is shown as a material witness in this case. Despite the fact that neither District has a significant local interest in this case, this factor weighs slightly in favor of transfer to the NDCA.

### iii. Familiarity with the Governing Law

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Both the NDCA and the EDTX are familiar with patent law, and thus this factor is neutral. *See In re TS Tech*, 551 F.3d at 1320-21.

### iv. Avoidance of Conflict of Laws

No conflict of laws issues are expected in this case, so this factor does not apply.

## V. CONCLUSION

In conclusion, this is not a case where transfer is clearly warranted. The most HTC has proven is that two factors favor transfer and two factors weigh against transfer. Therefore, the Northern District of California is not a clearly more convenient forum than the Eastern District of Texas. For the reasons set forth above, HTC's second motion to transfer venue is **DENIED**.

**So ORDERED and SIGNED this 3rd day of May, 2012.**

                                                               RODNEY GILSTRAP
                                                               UNITED STATES DISTRICT JUDGE